A99A0771. JAMES v. THE STATE.
(519 SE2d 478)

SMITH, Judge.

Sharrod D. James was indicted jointly with two co-defendants on the charge of trafficking in cocaine. He was tried by a jury, which found him guilty of the included offense of possession of cocaine. He appeals, contending in his sole enumeration of error that the trial court erred in admitting the alleged contraband and its wrappers

because the State showed an insufficient chain of custody. We do not agree, and we affirm the judgment.

The evidence presented at trial showed that James was driving a car north on I-95 in Bryan County with two friends, Jeffrey McMillan and Howard Delts, as passengers. He was stopped by Deputy Eddie Bashlor of the Bryan County Sheriff's Department because he was not wearing a seatbelt and one of the car's brake lights was out. Bashlor asked the three occupants to step out of the car and step back with another deputy. They did so, and all three occupants of the car gave Bashlor consent to search it.[1]

Bashlor began his search on the passenger side of the front seat, where he found a package wrapped in duct tape under the seat, within arm's length reach of the driver's side. The package was between golf ball and tennis ball size. Bashlor attempted to pull it open, but was unsuccessful. He then cut it open, revealing dryer sheets under the duct tape, then a clear plastic layer containing white powder. Suspecting the powder was cocaine, Bashlor drew his weapon, ordered James and the passengers to the ground, and hand-cuffed them. He walked back to his patrol car to retrieve a field-test kit, and he noticed a second package wrapped in duct tape on the shoulder of the interstate near the back of his car. He took the test kit up to the front of his car and found a third similarly wrapped package lying in the grass at the front of his car. He placed all three packages on the hood of the patrol car and numbered them with a magic marker according to where they were found.

James argues there were significant inconsistencies in the testimony of the officers regarding the chain of custody. We find no such significant inconsistencies. Bashlor testified that he placed the three packages numbered one, two, and three, into an evidence bag and sealed the bag. Bashlor had field tested only the first package, which was discovered inside the car. He placed the sealed bag in his patrol car and locked the car. When he arrived back at the Sheriff's Department, he turned the bag over to Chief Deputy McGowan to be placed in the evidence locker. He testified that he turned the packages over exactly as he found them at the scene, with the exception of the small cut on the first package that enabled him to field test the material. He testified that other than the small cut, he did not alter or replace any of the material seized.

In Bashlor's presence, McGowan did a repeat field test of the first package and placed all three packages, still wrapped in duct tape, into another sealed bag. The evidence was then placed in the

---

[1] James told Bashlor that McMillan owned the car, but McMillan said it was owned by his "old lady."

evidence room. The evidence custodian, Deputy Larry Jacobs, testified that he received the evidence from Bashlor and turned it over to the Tri-Circuit Drug Task Force approximately two days later. Jacobs testified that no one else had access to the evidence and he did not alter or tamper with it while it was in his possession.

Deputy Rick Rountree of the Bulloch County Sheriff's Department testified that at the time in issue, he was an investigator for the Tri-Circuit Drug Task Force. He and Jacobs both testified that Rountree received the evidence from the hands of McGowan in the presence of Jacobs. McGowan and Rountree entered the evidence room with Jacobs, and McGowan picked up the bag and handed it to Rountree. Rountree testified that when he received the evidence, one duct tape wrapped package had been "partially opened and the other two were intact." He signed the evidence receipt, secured the evidence in his car, and questioned the suspects. He then returned to his office in Claxton, where he separated the suspected cocaine from the packaging material, placing the packaging and the suspected cocaine in separate containers. He retained the packaging in the evidence room in Claxton until the morning of trial, when it was removed and brought to court. He field tested the suspected cocaine himself, placed it in another bag, and sealed the bag. He took that bag himself, sealed with his evidence tape, to the State Crime Lab and relinquished it to Patrick Long. He did not alter or tamper with the suspected cocaine. At trial, the bag was shown to Rountree and he testified that except for the markings presumably made by the State Crime Lab, it appeared unchanged.

Patrick Long, a forensic chemist for the Georgia Bureau of Investigation Division of Forensic Sciences, identified the markings on the bag as his own and testified he received the evidence from Rountree. He testified that the bag was essentially in the same condition at trial as it was when he received it. The evidence remained in his custody until retrieved for trial. He removed some material for analysis and resealed the bag.

It is true that Bashlor testified that he turned the evidence over to McGowan, while Jacobs, the evidence custodian, testified he received it from Bashlor. But this minor discrepancy in the testimony of the officers did not affect the sufficiency of the chain of custody, particularly since all the officers were present when the evidence was placed in the custody of the evidence custodian and all the officers who testified specifically denied any tampering or alteration. Such minor discrepancies go only to the weight of the evidence. *Darden v. State*, 212 Ga. App. 345, 346 (1) (441 SE2d 816) (1994).

Co-defendant McMillan admitted he, James, and Delts had purchased the cocaine together. James argues that McMillan testified that the amount purchased was more than was found in State's

Exhibit 2, the evidence bag containing the cocaine seized, suggesting that the package had been opened and tampered with. James is simply incorrect, however, about McMillan's testimony. Long's analysis showed that the material weighed 152.2 grams, tested positive for cocaine, and the portion tested had a purity of 87 percent. The record shows that McMillan admitted the three friends had bought six and one-half ounces of cocaine. When informed that the package contained 152.2 grams, he testified "Well, that's all of it, then."

When the State seeks to introduce evidence that is fungible in nature, the only showing required is a reasonable certainty that the evidence is the same as that seized and that no tampering or substitution has taken place. *Sartin v. State*, 203 Ga. App. 293, 295 (2) (b) (416 SE2d 572) (1992). The evidence presented satisfied the State's burden. Contrary to James's argument, the fact that McGowan did not testify at trial did not, without more, make the cocaine or the testimony relating to it inadmissible. Id. "There being, at most, bare speculation of tampering or substitution, the trial court correctly admitted the cocaine into evidence." (Citation and punctuation omitted.) *Sartin*, supra.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 14, 1999.

George A. Waters, for appellant.
*J. Thomas Durden, Jr., District Attorney, Henry P. Smith, Assistant District Attorney*, for appellee.